# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| ROMAN KHOLYAVKA, | : | Bankruptcy No. 08-10653DWS |
| | : | |
| Debtor. | : | |

## MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, United States Bankruptcy Judge**

Before the Court is the Motion to Convert Case to Case under Chapter 7 of the Bankruptcy Code (the "Motion") filed by the Acting United States Trustee ("UST") in the exercise of her duty under 28 U.S.C. § 586(a)(8) to apply promptly to the Court after finding material grounds for seeking relief under 11 U.S.C. § 1112. The UST alleges grounds exist by reason of Debtor's failure to file timely, complete and accurate monthly operating reports and pay quarterly trustee fees.

An evidentiary hearing was first held on the Motion on July 15, 2008 ("Initial Hearing"). By agreement with Debtor who committed to cure the identified deficiencies in his reporting, the UST allowed him additional time to comply before seeking a ruling on the Motion. A continued hearing was held on August 12, 2008 ("Continued Hearing")

at which time the UST pressed the Motion contending no cure had been effected. Finding "cause" for relief under § 1112, I will terminate this Chapter 11 case but through dismissal, not conversion, as agreed to by the UST and as preferred by Debtor.

## BACKGROUND

On January 28, 2008 Roman Kholyavka ("Debtor") filed this individual Chapter 11 case to save his residence from foreclosure.[1] While reporting his occupation as construction worker, his income is supplemented by rentals he receives for two properties he owns as well as from his wife's self employment in real estate and rentals. Schedules A and I. Doc. Nos. 30 and 36.[2]

At the Initial Hearing, the UST presented the testimony of her bankruptcy analyst Hugh Ward ("Ward") who is charged with the review of monthly operating reports required to be filed by all debtors seeking Chapter 11 protection. He explained that consistent with the UST's regular procedures, Debtor's counsel was sent a copy of the UST's Operating

---

[1] He claims to be in the process of seeking a refinance.

[2] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991). While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. Larson v. Gross Bank, 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules). See also In re Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (same); In re Leonard, 151 B.R. 639 (Bankr. N.D.N.Y. 1992) (same).

Guidelines for Chapter 11 Cases (the "Guidelines") shortly after the filing of the petition. Exhibit T-1. This document directs each debtor-in-possession to set up new books and records to reflect post-petition business, ¶ 1 and to close all existing bank accounts and establish debtor-in-possession accounts which are to be used for all estate funds, ¶ 2. The debtor is also required within 15 days of filing to provide the documents identified in attached form IR which includes a 12 month cash flow projection, certificates of insurance and evidence of the debtor-in-possession bank account, ¶ 5. The debtor is further advised of the UST's fee schedule and that the amount will be substantiated through the filing of monthly operating reports reflecting disbursements made by the debtor during the applicable reporting period, ¶ 6A. Also attached to the Guidelines are the forms to be utilized in preparing the monthly operating report.

These Guidelines were explained during the initial interview held by Ward with Debtor and his counsel on February 11. Since Debtor, whose primary language is Russian, has difficulty in comprehending and speaking English, his non-filing wife Liliya Kolyvaka ("Liliya") was present and explained matters to him which Ward believes they understood. She confirmed her understanding although she stated that she was overwhelmed by the requirements imposed.

As of the filing of the Motion on June 4, 2008 Debtor had not filed the initial or any of the subsequent required operating reports. On June 23, 2008, Debtor filed an application to appoint Vanya Tyrell ("Tyrell") as financial consultant for the purpose of preparing the operating reports. While noting that his case was not complex, Debtor nonetheless averred

that he needed assistance given his language problems. Doc. No. 48. On the eve of the Initial Hearing scheduled for July 8, Debtor filed operating reports that had been prepared by Tyrell for the months of February, March, April, May and June 2008. Exhibit T-2 through T-6.[3]

Ward testified that all the filed reports were seriously deficient and that the required supporting documents, i.e., a check register or cancelled checks, were not provided. Income was not accounted for nor was he able to reconcile the income and expenses with the balance on hand. Moreover the reports did not account for deposits to the bank account, and were replete with large and unexplained cash transfers to Liliya.[4]

In response, Debtor called Tyrell who explained that she had been contacted approximately three weeks before and asked to prepare the operating reports.[5] She stated she had no problem communicating through Liliya (who it appears is handling bankruptcy compliance, such as it is) and prepared the forms supplied to her as accurately as she could in the time frame given. She asked for more time to obtain detailed and supporting information, such as paid receipts that were requested but not provided, but the imminence

---

[3] Since the UST had not had the opportunity to review the filings, the hearing was continued until July 15, 2008.

[4] For example, in April there was income of $6,400 but deposits of $5,800. In May there was income of $3,400, expenses of $3,417 (including $3,367 paid to his wife) and deposits of $300. In June there were receipts of $4,800, expenses of $3,400 (including $2,220 to wife) and deposits of $40. Id.

[5] Debtor sought to attribute and then excuse his untimely filing by the language barrier which required him to secure a financial consultant. Liliya testified that she started looking for help right after filing, going to 8-9 places. However, Tyrell testified that she had done Debtor and Liliya's 2006 or 2007 tax work. As she was known to them and knew their finances, I do not understand why she was not contacted at the inception of the case instead of three months later.

of the hearing foreclosed that request. On the other hand, Liliya was under the impression that she had provided everything that was requested.

In the course of preparing the reports, Tyrell learned that Debtor had not used a bank account until June 30 and did not know why all Debtor's income was not deposited in the debtor-in-possession account. On July 1 she told Debtor, through Liliya who acknowledged as much, that Debtor had to deposit all income in the account and write checks to evidence his payments. She reviewed the leases that generate the rental income which Liliya advised her was paid each month but discovered that no estimated tax payments were being made on that income. Indeed Liliya testified that the rents are paid in cash and deposited into "her" account, thereby co-mingling estate and non-estate funds.

At the conclusion of the testimony, when it became apparent that Tyrell had not had a sufficient amount of time to prepare complete and accurate reports and given Liliya's assurance that she could provide additional documents to complete the reports, the UST suggested an adjournment to allow supplemental reports to be filed to hopefully cure the deficiencies. The Supplement to Debtor's Operating Report February through June 2008 (the "Supplement") that she prepared consists of an itemization of items paid from a bank account at M&T Bank ("M&T Account") and the checks evidencing such payments. Exhibit T-7. Curiously the M&T Account was identified in the Supplement as Liliya's account although the checks reflect both their names and disbursements made by Debtor as well as Liliya.[6]

---

[6] Liliya stated that Debtor's name was placed on the account since she has no driver's license. Yet he has used the account since the Chapter 11 case was filed.

Ward examined the foregoing and again was called to testify. He concluded that the Supplement dealt with a joint bank account which had not been disclosed before and still did not reconcile with the operating reports.[7] Moreover, there was still no check register or cancelled checks for the debtor-in-possession account, an unsurprising fact given the admission that such an account had not been used as of June 30, 2008.[8] The bottom line was that the UST could simply not identify estate expenditures or reconcile estate income and disbursements.

In response, Liliya stated that she is now putting estate expenses through the D-I-P account although she has been paying mortgages, utility bills, property insurance, real estate taxes and automobile installments through the M&T Account. She also acknowledged that certain of the expenses were paid in cash and records of same were not provided to Tyrell. She confessed that she is "not good with papers."

---

[7]

| | Operating Report Income | Operating Report Disbursements | M&T Account Disbursements |
|---|---|---|---|
| February | $3,400.00 | $3,400.00 | $6,366.73 |
| March | 3,400.00 | 2,295.44 | 2,228.94 |
| April | 6,400.00 | 7,483.00 | 2,672.74 |
| May | 3,400.00 | 3,417.00 | 1,200.05 |
| June | 4,800.00 | 3,400.00 | 300.72 (partial) |

Compare Exhibit T-7 with Exhibits T-2 through T-6. The Supplement makes no attempt to reconcile disbursement totals on the operating reports with disbursements from the M&T Account (which in some cases are greater and other times lesser) nor to reconcile either with income.

[8] The February report states "no bank account until March." Exhibit T-2.

**DISCUSSION**

I.

Section 1112(b) governs the conversion or dismissal of chapter 11 cases, and provides the bankruptcy court with the necessary power to promptly administer chapter 11 cases on its docket. In re Timbers of Inwood Forest, Ltd., 808 F.2d 363, 371 (5th Cir. 1987). While its function has not changed, Section 1112 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to add six additional examples of "cause" to convert or dismiss a chapter 11 case. 11 U.S.C. § 1112(b)(4). The now sixteen examples of "cause" listed in § 1112(b) are illustrative, not exhaustive. In re Jayo, 2006 WL 2433451, at *6 (Bankr. D. Idaho July 28, 2006); In re 3 Ram, Inc., 343 B.R. 113, 117 (Bankr. E.D. Pa. 2006). The moving party has the burden to prove cause under § 1112(b). In re Emergystat of Sulligent, Inc., 2008 WL 597613, at *6 (Bankr. E.D. Tenn. Feb. 29, 2008).

If cause is established, the Court shall convert or dismiss[9] unless (1) there are unusual circumstances that establish that such relief is not in the best interests of creditors and the estate[10] and (2) if the debtor or another party in interest establishes that (a) there is a

---

[9] Once cause is proven under BAPCPA § 1112, relief is mandatory unless the debtor meets its burden under § 1112(b)(2). In re Gateway Access Solutions, Inc., 374 B.R. 556, 560 (Bankr. M.D. Pa. 2006). BAPCPA has limited the court's discretion to refuse to dismiss or convert. Id.; In re Fisher, 2008 WL 17775123, at *5 (Bankr. D. Mont. April 15, 2008).

[10] The statute expressly requires the court to specifically identify what those unusual circumstances are, 11 U.S.C. § 1112(b)(1) and (b)(2), and while unusual circumstances are not
(continued...)

reasonable likelihood that a plan will be confirmed within a reasonable period of time and (b) the grounds for granting such relief include an act or omission (i) for which there exists a reasonable justification or (ii) that will be cured within a reasonable period of time fixed by the court. 11 U.S.C. § 1112(b)(2).

## II.

### A.

Under § 1106(a)(1), a debtor-in-possession[11] is required to perform the duties specified in § 704(8) which mandates the filing of periodic operating reports and summaries and such other information as the United States trustee or court requires if the business of the debtor is authorized to be operated.[12] An "unexcused failure to satisfy timely any filing or reporting requirement established by [the Bankruptcy Code] or by any rule applicable to a case under [Chapter 11]" is cause for relief under § 1112(b)(4)(F). The UST is charged with supervising the administration of Chapter 11 cases, including the debtor's performance of its statutory and fiduciary responsibilities. 28 U.S.C. § 586(a)(3).[13] To perform the role assigned to it by Congress, the UST has adopted reporting requirements embodied in its

---

(...continued)
defined, they are not thought to be conditions that are common in most chapter 11 cases. 7 Collier on Bankruptcy § 1112.04[3] at 1112-27 (15th ed. rev. 2005).

[11] By reason of § 1107, a debtor-in-possession has the duties of a trustee under § 1106(a)(1).

[12] As noted, Debtor has a rental real estate business in addition to his employment as a construction worker.

[13] The UST's role as the "watchdog" of a Chapter 11 proceeding, in particular in small or individual cases, is well established. See Morgenstern v. Revco D.S. Inc. (In re Revco D.S. Inc.), 898 F.2d 498, 500 (6th Cir. 1990).

Guidelines that a debtor-in-possession is required to fulfill. Failure "timely to provide information or attend meetings reasonably requested by the United States trustee" also constitutes cause for relief. 11 U.S.C. § 1112(b)(4)(H). Contending that Debtor has not filed timely complete operating reports, the UST seeks relief under § 1112(b) as it is expressly charged to do under 28 U.S.C. § 586(a)(8).[14]

The Motion also alleges "cause" for failure to pay the quarterly fees as required by 28 U.S.C. § 1930(a)(6). The fee levied is based on disbursements made in the case. Id. The Debtor has paid the minimum quarterly fee, i.e., $250. Whether that amount is sufficient is a function of the disbursements he has made. The UST verifies the adequacy of a debtor-in-possession's payment of UST fees, which are necessary to fund the UST program, through the operating reports which must disclose, inter alia, disbursements made during the case. Since Debtor has not provided complete and accurate disbursement information sufficient to calculate the requisite fee, the UST avers there is cause for relief under § 1112(b)(4)(K) ("failure to pay any fees or charges required under chapter 123 of title 28").

## B.

Even before the amendment of § 1112 to expressly identify failure to timely file operating reports as cause for dismissal or conversion under § 1112(b), such relief was the consequence to debtors who did not discharge that duty. In re Rey, 2006 WL 2457435,

---

[14] That section added by BAPCPA states that the UST "in any case in which the United States trustee finds material grounds for relief under section 1112 of title 11, shall apply promptly after making that finding to the court for relief."

Document   Page 10 of 13

at *8 (Bankr. N.D. Ill. Aug. 21, 2006) (pre-BAPCPA case) (under case law, the failure to timely submit operating reports is cause to convert or dismiss). The Rey court reasoned as follows:

> Monthly operating reports "are much more than busy work imposed upon a Chapter 11 debtor for no reason other than to require it do something." In re Berryhill, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991). They are "the life blood" of chapter 11, enabling creditors to keep tabs on the debtor's post-petition operations. Id. Failure to file them-and file them timely-is a serious breach of the debtor's fiduciary obligations and "undermines the Chapter 11 process." All Denominational New Church, 268 B.R. 536, 538 (8th Cir. BAP 2001).

Id. Accord In re Ronald Kern & Sons, 2002 WL 1628908, at *1-2 (W.D.N.Y. June 11, 2002) (*citing* cases).

These cases recognize that accurate and complete financial information is necessary to determine whether a debtor is able to successfully reorganize. They recognize that performance of this fiduciary obligation is a *quid pro quo* for the protection the debtor enjoys under the reorganization provisions of the Bankruptcy Code.

The UST has easily met her burden of establishing cause under § 1112(b)(2)(F), and (H).[15] Although the Chapter 11 petition was filed on January 28 and the initial report was due 15 days thereafter, no operating reports were filed until the day of the Initial Hearing on the Motion, i.e., July 8, 2008. Indeed Debtor did not even seek authorization to retain an admittedly necessary consultant until after the Motion was filed. Once the UST

---

[15] Whether a violation of subsection (b)(2)(K) has occurred cannot be determined absent the submission of operating statements reflecting disbursements. While they have now been filed, the UST has not indicated whether they would require a higher payment presumably because of her contention that they are not correct.

analyzed the untimely filed reports, the problem was not cured since they still were found sorely deficient. In short, the UST had no ability to assess the financial condition of Debtor nor evaluate Debtor's disbursements for the purpose of establishing the requisite trustee fee. Even then, the Trustee did not press for relief giving Debtor additional time to supplement the reports. The Supplement that was filed not only failed to explain the discrepancies in the reports but disclosed co-mingling of estate assets with the assets of Debtor's wife who also owns and rents real estate.

Having found that the UST has proven her case, the burden shifts to Debtor to establish unusual circumstances that would warrant continuation of the Chapter 11 proceedings as in the best interests of creditors and the estate. Debtor has been under bankruptcy court protection for almost eight months. For the first six months, he took no steps to discharge his duties as a debtor-in-possession as evidenced by his failure to use a debtor-in-possession account, his co-mingling of estate assets and his failure to file operating reports. Notwithstanding the filing of the Motion on June 4, 2008 which put him on notice of the problems with his case and having over two months to comply with his reporting duties of which he was apprised at the initial interview with Ward, he failed to do so. Incredibly his attorney took the position at the Final Hearing that by filing the Supplement, Debtor had performed.[16] Because Debtor has failed to keep records that will enable Tyrell to properly account his financial affairs (to the extent she understands the

---

[16] Counsel argued that compliance should be measured by his own subjective understanding of what documents were required as opposed to what Debtor was required to report to enable the UST to do its job.

requirements herself) and has failed to cure the reporting deficiencies when given the opportunity to do so, it appears that he either does not have the capability or will to perform his disclosure and other fiduciary obligations.[17] The grant of additional time has not advanced the case and thus I cannot find that these acts or omissions that gave rise to the Motion will be cured within any further reasonable time. Debtor has not established a reasonable likelihood that a plan will be confirmed within a reasonable time; indeed there was no mention of the formulation of a plan having even been considered by Debtor. Debtor's sole contemplated course of action is to refinance the property that is in foreclosure, presumably relying on the automatic stay to give him time to do so. The likelihood of that eventuality or the consequence to the Chapter 11 case was not elicited. In short, any further continuation of this case in not in the best interest of creditors who are stayed from exercise of their rights without any prospect of a reorganization. Finding that Debtor has not met his burden under § 1112(b)(2), relief under § 1112(b) shall be granted.

### C.

The Motion seeks conversion of the case to one under Chapter 7. As stated by Congress when it drafted § 1112(b):

> Subsection (b) gives wide discretion to the court to make an appropriate disposition of the case when a party in interest requests. The court is permitted to convert a reorganization case to a liquidation case or to dismiss the case, whichever is in the best interests of the creditors and the estate,

---

[17] In referring to Debtor, I am including Liliya who appears to be managing this case for Debtor given his difficulty with the English language. As she was not aware that she had not accounted for the discrepancies the UST identified at the Initial Hearing, the prospect of any better accounting is remote at best.

only for cause. ... The court will be able to ... use its equitable powers to reach an appropriate result in individual cases.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 405-06 (1977). See also Official Committee of Unsecured Creditors v. SGL Carbon Corp. (In re SGL Carbon Corp., 200 F.3d 154, 160 (3d Cir. 1999). Given the lack of reliability of Debtor's records and the lack of involvement of any creditors in this Chapter 11 case,[18] I question whether the appointment of a Chapter 7 trustee would be a useful remedy. Debtor owns and operates rental properties which would require immediate undertakings by an appointed trustee. This burden in cost, time and responsibility would not be offset by any apparent benefit to the estate. To the extent that Debtor's Schedules can be relied upon, there appears to few unsecured creditors in number or amount. It is not the role of a Chapter 7 trustee to liquidate properties for the benefit of secured creditors. Finally, when questioned, the UST does not insist on conversion. Thus, I exercise my discretion to dismiss, not convert this Chapter 11 case. In re State Street Associates, L.P., 348 B.R. 627 (Bankr. N.D.N.Y. 2006) (*sua sponte* dismissal warranted where no real benefit to converting case apparent).

An Order consistent with the foregoing Memorandum Opinion shall issue.

*Diane W. Sigmund*

_____
DIANE WEISS SIGMUND
United States Bankruptcy Judge

Dated: August 20, 2008

---

[18] According to Liliya, current mortgage, utility and tax payments are being made. While attorneys for two secured creditors have entered an appearance, neither has taken a position on the Motion. The sole issue identified as animating this case was the mortgage in foreclosure for which state law remedies are adequate.